UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: ) | Bankruptcy Case |
| ) | No. 07-62144-aer13 |
| PAUL DeWAYNE SANCHEZ and ) | |
| DEBORAH LYNN SANCHEZ, ) | MEMORANDUM OPINION |
| ) | |
| Debtors. ) | |

This matter comes before the court on creditor World Famous Auto's (WFA) objection to confirmation of the Debtors' Chapter 13 plan. The matter has been briefed and is ripe for decision.

The facts are largely undisputed. Debtors Paul and Deborah Sanchez filed their Chapter 13 petition, herein, on July 30, 2007. WFA is secured in a 2000 Chevrolet pickup. Debtors concede WFA's claim is a purchase money "910" claim entitled to protection under 11 U.S.C. § 1325(a)'s[1] "hanging paragraph." Debtors' Amended plan dated July 30, 2007 proposes that Debtors make monthly payments of $288 to the trustee, along with net tax refunds received during the life of the plan. Among

---

[1] Unless otherwise indicated, all subsequent statutory references are to Title 11 of the United States Code.

MEMORANDUM OPINION-1

other claims, the trustee is to pay WFA's claim in full from these payments. Adequate protection payments to WFA are proposed at $50 monthly until attorney's fees are paid in full. Thereafter, WFA is to receive monthly payments of $250. Attorney's fees are disclosed as $3,000 with $2,863 to be paid through the plan "concurrently with adequate protection payments to secured payments [sic]." WFA objects that the plan's treatment does not comply with § 1325(a)(5)(B)(iii).

Discussion:

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA),[2] codified, through several provisions in Chapter 13 of the Bankruptcy Code, "adequate protection" requirements for certain types of secured debt. It also added a provision dictating how periodic payments on secured debt are to paid. The interplay between these new provisions is at issue here.

One of the provisions, § 1326(a)(1)(c), protects purchase-money lenders secured in personal property. Unless the court orders otherwise, it requires a debtor to begin making adequate protection payments 30 days after the order for relief.[3] The other provision, § 1325(a)(5)(B)(iii),

---

[2] Pub. L. 109-8, April 20, 2005, 119 Stat. 23. Most of BAPCPA's provisions, including those relevant to the case at bar were effective for cases filed on or after October 17, 2005.

[3] Section 1326(a)(1)(C) provides:

> Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount-
>
> that provides adequate protection directly to a creditor holding an allowed claim secured by

(continued...)

MEMORANDUM OPINION-2

relates to payments on secured claims when the debtor proposes to retain the collateral.[4] It provides as follows:

> With respect to each allowed secured claim provided for by the plan—
> if—
> (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
> (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan.

---

[3](...continued)
personal property to the extent the claim is attributable to the purchase of such property by the debtor for that portion of the obligation that becomes due after the order for relief, reducing the payments under subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment.

    This District requires pre-confirmation payments under this section to be made through the trustee. LBR 3015-1.B.11. The trustee only disburses once the creditor has filed a proof of claim. Unless the plan provides otherwise, the amount of the payment is set out in the plan. Id.. The trustee applies these pre-confirmation payments to the creditor's allowed claim. Id.; see also, plan ¶ 2(b)(3).

    [4] Under § 1325(a)(5), there are three ways a debtor may treat a secured claim and gain confirmation. The creditor can accept the proposed treatment, § 1325(a)(5)(A); the debtor can surrender the collateral, § 1325(a)(5)(C); or the debtor may retain the collateral provided the creditor retains its lien until the earlier of payment of the entire underlying debt or entry of the debtor's discharge, § 1325(a)(5)(B)(i), and the value as of the plan's effective date, of property to be distributed under the plan is not less than the claim's allowed amount. § 1325(a)(5)(B)(ii). New § 1325(a)(5)(B)(iii) imposes additional requirements when periodic payments of secured claims are proposed.

MEMORANDUM OPINION-3

One court has explained the purpose behind the statute as follows:

> Prior to BAPCPA, it was not uncommon for some Chapter 13 plans to provide for backloaded payments, such as balloon payments. Another form of backloading involved graduated or step-up payment plans, where the payments started out smaller and increased over time. Secured creditors, particularly those secured by a vehicle, viewed this as unfair, exposing them to undue risk in light of the constant depreciation of their collateral.
>
> Other plans, filed by debtors whose employment is seasonal, provided for reduced payments or no payments at all during certain months of the year, or called for payments to be made quarterly or semi-annually, rather than monthly, based upon the peculiarities of the debtor's income stream. Secured creditors had similar complaints with those plans.
>
> In response to those creditor concerns, Congress enacted the equal payment provision and a companion provision extending the concept of adequate protection, formerly a preconfirmation requirement, to postconfirmation plan payments. 11 U.S.C. § 1325(a)(5)(B)(iii)(II). The equal payment provision prevents debtors from backloading payments to secured creditors or paying them other than on a monthly basis.

In re Erwin, 376 B.R. 897, 901 (Bankr. C. D. Ill. 2007)

Under § 1325(a)(5)(B)(iii)(I) (**subsection (I)**), when a debtor proposes to pay a secured claim in "periodic payments,"[5] those payments must be in equal monthly amounts. If the debt is secured by personal property, § 1325(a)(5)(B)(iii)(II) (**subsection (II)**)[6] requires that the

---

[5] The term "periodic payments" is nowhere defined in the Bankruptcy Code. Here, the parties do not dispute that Debtors are attempting to pay WFA through periodic payments.

[6] The question of whether or not Subsection (I) applies to creditors secured by real property is beyond the scope of this opinion. Subsection (II) does not apply to creditors secured by real property. Subsection (II) does,
(continued...)

MEMORANDUM OPINION-4

periodic payments be sufficient to adequately protect the creditor "during the period of the plan." The issue here is whether the debtors' plan meets the "equal monthly payments" contemplated by § 1325(a)(5)(B)(iii).

There is a paucity of caselaw on this subject. In the few cases that have been reported, the courts are split. The slight majority view appears to side with Debtors' position that "adequate protection payments" may continue post-confirmation in one amount, with "equal monthly payments" replacing them at a higher amount at some later time during the plan. Compare, In re Hill, 2007 WL 499622 (Bankr. M.D.N.C. 2007); In re DeSardi, 340 B.R. 790 (Bankr. S. D. Tex. 2006); In re Erwin, 376 B.R. 897 (Bankr. C.D. Ill. 2007), with, In re Denton, 370 BR 441 (Bankr. S.D. Ga. 2007).

The majority view allows room, in Chapter 13 plans, to pay debtors' attorneys on an expedited basis. While this court agrees that this is a salutary goal, this court cannot join in the statutory interpretations employed to reach this result.[7]

Each of the courts subscribing to the majority view reach the same result by different but strained interpretations of the statute. The DeSardi court views subsection (II)'s adequate protection requirement

---

[6](...continued)
however, apply to all creditors secured by personal property, as distinguished from § 1326(a)(1)(C), which only applies to creditors with purchase-money security interests.

[7] United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241, 109 S. Ct. 1026, 1030, 103 L. Ed.2d 290 (1989)("where. . . the statue's language is plain, the sole function of the courts is to enforce it according to its terms" (internal quotation omitted)).

MEMORANDUM OPINION-5

to be different from subsection (I)'s equal monthly payment requirement. Here, however, interpreting the statute's plain meaning and in context, it is clear that the term "such payments" appearing in both subsections applies to the periodic payments that must be made "during the period of the plan" and that subsections (I) and (II) are linked when the collateral is personal property.

DeSardi also rests largely on its interpretation of § 1326(b)(1). That section provides that "[b]efore or at the time of each payment to creditors under the plan, there shall be paid any unpaid claim of the kind specified in section 507(a)(2) . . . ."[8] DeSardi interprets this language to require <u>full</u> payment of attorney's fees (and other administrative expenses) before "equal monthly payments" to secured creditors under subsection (I) may begin. DeSardi, supra at 808. No such preference, however, may be found in this District, as administrative claimants may insist only on concurrent payments with, rather than full payment before, non-administrative claims. See, In re Ryan, 228 B.R. 746 (Bankr. D. Or. 1999) (interpreting analogous Chapter 12 provisions). As such, § 1326(b)(1) may be harmonized with § 1325(a)(5)(B)(iii).

The Hill court recognized that subsections (I) and (II) are linked when the collateral is personal property. The court then appears to undercut this link by holding the term "during the period of the plan" in subsection (II) modifies "adequate protection" not "such [periodic]

---

[8] Section 507(a)(2) gives administrative expense priority to those claims described in § 503(b), including a Chapter 13 debtor's attorney's fees. See, § 503(b)(2) (incorporating § 330(a)(4)(B)).

MEMORANDUM OPINION-6

payments" and thus "cannot be read to dictate any specific time for the equal monthly payments to begin." Hill, supra 2007 WL 499622 at *6. In practical terms, this interpretation de-links subsections (I) and (II). Under subsection (II) adequate protection is provided only by subsection (I)'s equal monthly payments. Subsection (II) then answers when this protection must be provided, by requiring it "during the period of the plan." The statute does not provide for equal monthly payments "during part of the period of the plan" or "during some of the period of the plan." This court construes "during the period of the plan" to mean equal monthly payments must commence with confirmation and last until the secured claim is paid.[9]

Curiously, after explaining the purpose behind the statute, the Erwin court supra, reaches the same result as the majority. There debtors' plan proposed level payments into the plan from which pro rata distribution would go to secured creditors as determined by the trustee. Secured creditors were receiving pre-confirmation adequate protection payments paid by the trustee. The plan called for payment of the debtor's attorney's fees by the trustee. A local standing order provided for expedited payment of the fees, (i.e. the lesser of 50% of the funds available for distribution or $250, in any given month), which meant, that as a practical matter, the payments to secured creditors would be at one level while attorney's fees were being concurrently paid, then

---

[9] This court agrees that monthly payments need not be made for the plan's entire duration. Debtor may propose to pay secured claims before their plan ends. Hill, supra 2007 WL 499622 at *6. This conclusion is buttressed by new § 1325(a)(5)(B)(i)(I) which allows the creditor to retain its lien until the earlier of the time the entire debt is paid in full (e.g. a "910" or oversecured claim) or when discharge is granted.

MEMORANDUM OPINION-7

increased once the fees were paid in full. The court distinguished between the debtor's proposals in their plan and the way the plan was actually administered by the trustee, as determined by its standing order and § 1326(b)(1). The court held that debtors' level payments into the plan and the proposed pro rata distribution to secured creditors complied with subsection (I)'s "equal monthly payment" requirement. Erwin, supra at 902-3. It further held the trustee was not bound by subsection (I) in administering the plan. Id. at 902. Finally, it held the increase in payments, once attorney's fees were paid, was not due to debtors' plan, but rather the operation of § 1326(b)(1) and the court's standing order. Id. at 902-903.

Erwin's rationale is problematic for several reasons. Subsection (I) is part of § 1325(a)(5), which expressly pertains to "allowed secured claims provided for by the plan." Thus, subsection (I) refers to distributions by the trustee to creditors under the plan, not the debtor's payments into the plan. In re Lemieux, 347 B.R. 460, 465 (Bankr. D. Mass. 2006). Further, in sidestepping the "equal payment" statute, Erwin reposits too much discretion in the trustee in administration of the plan. Section § 1326(a)(2) requires the trustee to retain plan payments until confirmation and then upon confirmation distribute those payments in "accordance with the plan." Pursuant to § 1326(c), except as otherwise provided in the plan or the order confirming the plan, the trustee is required to make payments to creditors "under the plan." These provisions indicate that a plan's specific provisions trump the trustee's discretion in making payments to creditors.

MEMORANDUM OPINION-8

In contrast, <u>Denton</u> holds that "periodic payments" under subsection (I) is not a defined term, but rather refers to <u>all</u> regularly recurring post-confirmation payments on an allowed secured claim, such that they all must be equal. <u>Id</u>. at 445 ("The word 'periodic' simply describes payments that recur at regular intervals."). Thus, pre-confirmation adequate protection payments under § 1326(a)(1)(C) may not be extended beyond confirmation when the monthly amount is less than the amount of payment on the allowed secured claim under the plan. This cuts through the majority courts' distinction between post-confirmation "adequate protection" and "equal monthly" payments. Under subsection (I) the periodic payments are "property to be distributed pursuant to <u>this subsection</u>." (emphasis added). "This subsection" refers to § 1325(a)(5)(B)(ii) which requires that "the value, as of the effective date of the plan, of <u>property to be distributed under the plan on account of such claim</u>," be not less than the allowed amount of the secured claim. (emphasis added). <u>Denton</u> recognizes that post-confirmation, adequate protection payments would be "property . . . distributed under the plan on account of the . . . [secured] claim," and not some special breed of payment divorced from the claim.[10] <u>Denton's</u> holding is further buttressed by subsection (II)'s "during the period of the plan" language, which as discussed above, means that equal monthly payments must start with the first payment after confirmation and continue until the secured claim is paid. This court agrees with the minority view as expressed by the court in <u>Denton</u>.

---

[10] There is no dispute that "adequate protection" payments are credited against the secured claim.

MEMORANDUM OPINION-9

Conclusion:

Debtors' plan does not comply with § 1325(a)(5)(B)(iii)'s "equal monthly payment" requirement.[11] Confirmation must be denied. Debtors will be given 28 days to file an amended plan or a motion to convert. Absent such timely filing, this case will be dismissed without further notice or hearing.

The above constitute the court's findings of fact and conclusions of law under FRBP 7052; they shall not be separately stated.

*albert E. Radcliffe*

ALBERT E. RADCLIFFE
Bankruptcy Judge

###

---

[11] While this court's holding may appear to undercut the speed at which a Chapter 13 debtor's attorney's fees may be paid, this isn't necessarily so. The type of stepped payments Debtors propose are not per se, non-confirmable. A secured creditor may always accept its proposed treatment under § 1325(a)(5)(A). If the creditor objects to stepped payments, debtors are not precluded from making room for payment of attorney's fees by modifying the plan to amortize the secured claim at a lower (but equal) monthly payment over a longer period. All that is required under § 1325(a)(5)(B)(iii) is that the proposed equal monthly payments pay the secured claim and be sufficient to adequately protect the creditor's interest. Here, while WFA has not contested that $50 per month adequately protects its interest, that amount is insufficient to amortize its claim, even over the maximum 60 months permitted.

MEMORANDUM OPINION-10